HERCULES, The (BRACKETT v.). See Case No. 1,762.

HERCULES, The (NELSON v.). See Case No. 10,108.

HERCULES, The (RAND v.). See Case No. 11,548.

HERCULES, The (WINTER v.). See Case No. 17,889.

---

## Case No. 6,402.

### In re HERCULES MUT. LIFE ASSUR. SOC.

[6 Ben. 35; 5 Am. Law T. Rep. 400; 16 Int. Rev. Rec. 148; 6 N. B. R. 338; 6 Alb. Law J. 358.][1]

District Court, S. D. New York. April 12, 1872.

BUSINESS CORPORATION — NONPAYMENT OF COMMERCIAL PAPER—BONA FIDE DEFENCE.

1. A life insurance company is a business corporation, within the purview of section 37 of the bankruptcy act [of 1867 (14 Stat. 535)].

2. Under the amendment to the 39th section of the bankruptcy act, passed July 14th, 1870 (16 Stat. 276), even if the suspension of payment of commercial paper has continued for fourteen days, yet a bona fide denial of liability on the paper in respect to which the suspension occurs, is such an adequate legal excuse, that the party ought not to be adjudged a bankrupt solely for suspending for fourteen days on the paper, even though, on investigation, the bankruptcy court may be of opinion that, in fact, the debtor was liable on the paper.

[Applied in Re Westcott, Case No. 17,430. Cited in Mendenhall v. Carter, Id. 9,426; Re Hadley, Id. 5,894.

3. A corporation has power to make commercial notes, without express authority.

[4. Disapproved in Winter v. Iowa, M. & N. P. R. Co., Case No. 17,890, as to the holding that mere suspension or nonpayment of commercial paper shall be deemed an act of bankruptcy, although committed by a person not included in the six classes specified in the act.]

In bankruptcy.

J. D. Reymert, for petitioner.
A. R. Dyett, for debtors.

BLATCHFORD, District Judge. This is a petition by Rosalie Libline, for an adjudication of bankruptcy against the Hercules Mutual Life Assurance Society of the United States, a corporation organized under the laws of the state of New York providing for the incorporation of associations for transacting the business of life insurance. It is undoubtedly a business corporation within the purview of section 37 of the bankruptcy act. The indebtedness alleged by the petitioner, is a promissory note made by the corporation, in its corporate name, and signed by its president, and by its assistant secretary, dated May 16th, 1871, for the sum of $1,000, payable six months after date, to the order of the petitioner. The act of bankruptcy alleged in the petition is, that the corporation "has stopped and suspended, and not resumed, payment of its commercial paper within a period of fourteen days, to wit, from the 19th day of November," 1871, "to the present time" (January 6th, 1872); "that a large amount of its commercial paper has been issued, while the said corporation was insolvent, which said commercial paper is past due and remains unpaid; and which the said corporation could not be able to pay in the ordinary course of its business, being insolvent at the time of making the same; that the corporation has property which it has fraudulently refused and neglected to appropriate towards the payment of its indebtedness."[2]

[The thirty-ninth section of the bankrupt act of March second, eighteen hundred and sixty-seven, as originally enacted (14 Stat. 536), provided, that "any person residing and owing debts as aforesaid," that is (section 11), "residing within the jurisdiction of the United States," and "owing debts provable under this act exceeding the amount of three hundred dollars," "who, being a banker, merchant or trader, has fraudulently stopped or suspended and not resumed payment of his commercial paper within a period of fourteen days, shall be deemed to have committed an act of bankruptcy," &c. There was no doubt that the person to be proceeded against under this clause must in all cases have been a banker, merchant or trader. But various interpretations were given by the courts to the words "fraudulently stopped or suspended and not resumed payment of his commercial paper within a period of fourteen days"—that (in Re Wells [Case No. 17,387]; and in Re Cowles [Id. 3,-297]; and in Doan v. Compton [Id. 3,940]; and in Re Weikert [Id. 17,361]; and in Re Thompson [Id. 13,936]; and in Re Sohoo [Id. 13,162]) the word "fraudulently" did not qualify the whole sentence, but an adjudication could be had where the suspension continued for fourteen days, although such suspension was not fraudulent, and also at once, where the original suspension was fraudulent; that (in Re Jersey City Window Glass Co. [Id. 7,292]; and in Re Leeds [Id. 8,205];

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission. 6 Alb. Law. J. 358, contains only a partial report.]

[2] [Inasmuch as the 39th section of the act, as amended by the act of July 14th, 1870 [16 Stat. 276] has been repealed by the act of June 22d, 1874 [18 Stat. 178], the discussion which here followed, of the construction of that act of 1870, omitted from 6 Ben. 35, is here inserted from 6 N. B. R. 338.]

and in Re Cone [Id. 3,095]; and in Re Hollis [Id. 6,621]; and in Re Davis [Id. 3,615]) the suspension and non-resumption must in all cases be fraudulent; that (in Re Ballard [Id. 816]; and in Re Shea [Id. 12,729]) a suspension for fourteen days was prima facie evidence of fraud; and that (in Re Davis [supra]) a suspension for fourteen days was not prima facie evidence of fraud. In this condition of the statute and the decisions, congress passed the act of July fourteenth, eighteen hundred and seventy (16 Stat. 276), which provides, that the clause in the thirty-ninth section, "or who, being a banker, merchant or trader, has fraudulently stopped or suspended and not resumed payment of his commercial paper within a period of fourteen days," shall be amended so as to read as follows: "or who, being a banker, broker, merchant, trader, manufacturer or miner, has fraudulently stopped payment, or who has stopped or suspended and not resumed payment of his commercial paper within a period of fourteen days."

[It is contended for the respondent, in this case, that it is not a banker, broker, merchant, trader, manufacturer or miner, and that, therefore, it is not within the clause in the thirty-ninth section, as amended. This corporation is, undoubtedly, not a banker, or a broker, or a merchant, or a trader, or a manufacturer, or a miner. The view on the part of the respondent is, that the words "banker, broker, merchant, trader, manufacturer or miner," qualify the whole of the clause as it now reads, as well that part of the clause which follows the second "who" therein, as that part which precedes the second "who." In the clause, as it stood before it was amended, there was but one "who," and it was followed by only one "has." In the clause as it now reads, each "who" is followed by its own "has," and each "has" has its own "who" preceding it. If the clause now read, "or who, being a banker," &c., "has fraudulently stopped payment, or has stopped," &c., omitting the second "who," and leaving the "who" preceding the words "being a banker," &c., to be the nominative to the second "has," as well as to the first "has," there could be no doubt that the words "being a banker," &c., would qualify all the provisions of the clause. So, also, if the clause now read, "or, being a banker," &c., "who has fraudulently stopped payment, or who has stopped," &c., the words "being a banker," &c., would qualify all the words of the clause. In the preceding part of the section the first time the word "who" occurs, it is nominative to the word "shall," as that word recurs, five times, before the word "who" recurs again, and each time the word "shall" precedes the declaration of a distinct act of bankruptcy. The second time the word "who" occurs, it is nominative to the words "has been," as those words recur, twice, before the word "who" recurs again, and each time the words "has been" precede the declaration of a distinct act

of bankruptcy. The third time the word "who" occurs, it is followed immediately by the qualifying words, "being bankrupt or insolvent, or in contemplation of bankruptcy or insolvency," which apply to and qualify all the enumerated acts of bankruptcy which follow in the section down to the fourth "who." Those words qualify the words "shall make," &c., "or give," &c., "or procure or suffer," &c. It is, therefore, apparent, that congress was, at the time the act of eighteen hundred and seventy was passed, cognizant of the use, in the section, of qualifying words to qualify various acts of bankruptcy expressed in a clause containing but a single "who." And, when it came to amend the clause containing the fourth "who," with qualifying words in it, "being a banker," &c., which manifestly qualified the whole clause, it divided the clause, as distinctly as language can divide it, into two parts—(1.) A person, residing and owing debts as aforesaid, who, being a banker, broker, merchant, trader, manufacturer or miner, has fraudulently stopped payment; (2.) A person, residing and owing debts as aforesaid, who has stopped or suspended and not resumed payment of his commercial paper within a period of fourteen days. It repeats the word "who;" and, the second time, without the qualifying words given to it the first time. The words "stopped payment" do not require the aid of the words "commercial paper" to give them meaning. Fraudulent stoppage of payment by a banker, &c., is, in such a statute, predicable only of the fraudulent stoppage of payment of debts. Congress seems to have taken up the whole subject of the stoppage of payment of debts, as an act of bankruptcy, in the act of eighteen hundred and seventy, and enacted that brokers, manufacturers and miners, as well as bankers, merchants and traders, shall, if they fraudulently stop payment of their debts, be liable to be adjudged bankrupts at once, and that any person who makes commercial paper, and then stops or suspends payment of it, and does not resume payment of it within a period of fourteen days, shall be liable to be adjudged a bankrupt. In respect to those classes of persons who are more immediately connected with commercial transactions, namely, bankers, brokers, merchants, traders, manufacturers and miners, the clause, as amended, provides, that, if they fraudulently stop payment of their debts, they shall be adjudged bankrupts. In respect to all persons, as well those more immediately connected with commercial transactions as all other persons, it provides, that, if they so far voluntarily enter the field of commercial transactions as to give out their commercial paper, then, if they stop or suspend payment of such paper, and do not resume payment of it within a period of fourteen days, they shall be adjudged bankrupts. This is a reasonable and consistent view of the relations of debtors, in respect to the stoppage of payment of debts. If a person, be he who he may, wishes

to be free from the liability of being put into bankruptcy for the stoppage or suspension and non-resumption for fourteen days of the payment of commercial paper, let him keep out of the domain of commerce, by not giving commercial paper. If he is not a banker, broker, merchant, trader, manufacturer or miner, and has given no commercial paper, he is not within this clause at all. If he is a banker, broker, merchant, trader, manufacturer or miner, and has fraudulently stopped payment, he may be adjudged bankrupt at once, without the delay of fourteen days. If he is a banker, &c., and has stopped payment without fraud, he cannot be adjudged a bankrupt, unless he has stopped or suspended for fourteen days the payment of commercial paper given by him. Whoever gives commercial paper is considered as, pro tanto, engaged in commerce, and, in the interests of commerce, must not permit it to lie over for more than fourteen days. But a direct fraudulent stoppage of the payment of debts is made an act of bankruptcy only when committed by a person belonging to one of the six specified classes. They are selected as the classes most directly engaged in the business of commerce. And these views are consistent with the only grammatical reading of the clause.

[Another suggestion is of force. In order to make the words, "being a banker," &c., qualify the words which follow the second "who," it is necessary that the second "who" should be eliminated, so that the structure of the sentence shall be, "who, being a banker," &c., "has fraudulently stopped payment, or has stopped or suspended and not resumed payment of his commercial paper within a period of fourteen days." But, there is as much warrant for eliminating, in addition, the second "has," as there is for eliminating the second "who" only. If the second "who" and the second "has" are both of them eliminated, the clause will read. "who, being a banker," &c., "has fraudulently stopped payment, or stopped or suspended and not resumed payment of his commercial paper within a period of fourteen days." This would not only make the words "being a banker," &c., qualify the whole clause, but would also make the word "fraudulently" qualify the whole clause, so that the two classes of persons subject to the clause would be; (1.) "a banker," &c., who "has fraudulently stopped payment" of his debts, and who could be adjudged a bankrupt at once; (2.) "a banker," &c., who has fraudulently "stopped or suspended and not resumed payment of his commercial paper within a period of fourteen days." On such reading, there would be such an expression of an intention to confine a fraudulent stoppage or suspension on commercial paper to one continued for fourteen days, as to make it necessary to confine the meaning of the words "fraudulently stopped payment," in the first branch of the clause, to a fraudulent stoppage of the payment of debts other than commercial paper; otherwise, the second branch of the clause would be comprehended within the first, and would have no meaning. All this indicates, that the only proper rule of construction is to give the usual grammatical effect and meaning to every word in the clause, when, as here, the resulting interpretation is one which makes the clause not only sensible and consistent in itself, in all its parts, but reasonable and natural, in view of the subject matter to which it relates. I am aware, that in Re Chandler [Case No. 2,591], it is said by Lowell, J., that, by the act of eighteen hundred and seventy, any person is liable to be adjudged a bankrupt, who, being a banker, &c., has stopped and suspended and not resumed payment of his commercial paper within a period of fourteen days. But the question I have considered did not necessarily arise, because he found that the debtor in that case was a manufacturer. So, also, in Baldwin v. Wilder [Id. 806], the question here discussed did not arise, although Emmons, J., in the course of his opinion, says, that the act of eighteen hundred and seventy provides that, "if the merchant, &c., has fraudulently stopped payment, or has stopped or suspended and not resumed payment of his commercial paper within a period of fourteen days, he shall be adjudged a bankrupt." In Re Kenyon [1 Utah, 47], the expression is used, that, if a banker, &c., allows his paper to go to protest and suspends for fourteen days, or if he has fraudulently stopped payment, in either case he has committed an act of bankruptcy. This is undoubtedly true, but the question raised in the present case was not considered. There is an absence of adjudication on the direct point involved. But with the view I take of the statute, I must hold, that the fact that the debtor in this case is not in one of the six specified classes, forms no objection to adjudging it a bankrupt, if it has stopped or suspended and not resumed payment of its commercial paper within a period of fourteen days.

[It is to be noted, that an interpretation of the clause, as amended, which would give to it the same meaning it would have if it read thus, "who, being a banker, broker, merchant, trader, manufacturer or miner, has fraudulently stopped payment of his commercial paper, or has stopped or suspended and not resumed payment of his commercial paper within a period of fourteen days," requires, not only that the grammatical effect of the second "who" in the clause shall be disregarded, in order to make the words, "being a banker," &c., qualify the words which follow the second "who," but that the words, "of his commercial paper," shall be adopted from the second branch of the clause and inserted in the first branch, after the word "payment." All doubtful and tentative constructions of the clause are avoided, if the natural and ordinary construction

So much of the petition as alleges that the corporation has property which it has fraudulently refused and neglected to appropriate towards the payment of its indebtedness, must be regarded as an allegation of a fraudulent stoppage of payment. This is no allegation of any act of bankruptcy in respect to this corporation, for the reason that it is not a banker, broker, merchant, trader, manufacturer or miner.

The remaining allegations are, that the corporation, while insolvent, issued a large amount of its commercial paper, which paper is past due and unpaid, and which it could not be able to pay in the ordinary course of its business, and that it has stopped and suspended, and not resumed, payment of its commercial paper from the 19th of November, 1871, being more than a period of fourteen days.

The commercial paper shown to have been issued by the corporation consists of negotiable promissory notes, in the usual form of such notes, payable to order, at specified times after date, and running in the name of the corporation, and signed by its proper officers. The only consideration shown for such notes was loans of money to the corporation. On this it is insisted that the notes are not commercial paper of the corporation, within the act. One point taken is, that the corporation has no express power to make notes. But it is not shown that it is inhibited from borrowing money for the legitimate purposes of its business, and from giving notes as evidence of such indebtedness. In general, an express authority is not indispensable to confer upon a corporation the right to borrow money, or to become a party to negotiable paper. Ang. & A. Corp. § 257. A corporation, in order to attain its legitimate objects, may deal precisely as an individual may, who seeks to accomplish the same ends; and this includes the power to borrow money for use in its legitimate business, and the power to give a time engagement to pay the debt, in any form not prohibited by statute. Curtis v. Leavitt, 15 N. Y. 9, 62; Smith v. Law, 21 N. Y. 296, 298, 299. In the present case the evidence shows that the notes spoken of in the petition as commercial paper were given, either originally or by renewal, for loans of money made to the corporation for use, and used by it, for the legitimate purposes of its business.

In the view I take of the clause in question the decisions before the act of 1870 in regard to the meaning of the term "commercial paper," in the clause as it then read, to the effect that it must be commercial paper given by a banker, merchant, or trader, in the course of, or in connection with, his business as such, and not merely commercial paper in form given for loans of money,

³ [From 6 N. B. R. 338.]

have no application to the term as found in the clause as amended by the act of 1870. There can be no doubt that, where the act declares that any person who gives his commercial paper, and then stops or suspends payment of it, and does not resume payment of it for fourteen days, may be adjudged a bankrupt, it means, by "commercial paper," bills of exchange, promissory notes, bank checks, and other negotiable instruments for the payment of money, which, by their form, and on their face, purport to be such instruments as are, by the law merchant, recognized as falling under the designation of "commercial paper." Under this definition the notes in this case were commercial paper, within the act.

The allegation that the corporation issued this paper while insolvent has no relevancy in this case, except as bearing on the allegation that it has stopped and suspended, and not resumed, payment of such paper, for fourteen days; and the same remark is true of the allegation that the corporation could not be able to pay such paper in the ordinary course of its business, the paper being overdue. The question then comes to this sole point—whether the corporation has stopped or suspended and not resumed payment of such paper within a period of fourteen days, within the true intent and meaning of the act.

One of the points most seriously contested, in this case, in the evidence, and on the hearing, was, whether the corporation was really liable to the petitioning creditor on the note set forth in the petition. I think its liability on that note is established by the evidence. The $1,000 which she loaned on the note of Mr. Homberg, for $1,000, indorsed by Mr. Reymert, of the 16th of December, 1870, was really loaned to the corporation, through Mr. Reymert, its president, and was used for the business of the corporation, the note being a note made to raise money for the corporation, and being one of three notes made by Homberg for that purpose, and loaned to the corporation in exchange for its note of the same date for $3,500, the aggregate amount of such three notes. This note for $3,500 was afterwards returned to the corporation, and the three notes of Homberg were extinguished, the note in the petition being given to the petitioner in exchange for the $1,000 note of Homberg on which she loaned the $1,000. In so giving its note to the petitioner, the corporation did what, in justice, it was bound to do, as respected both the petitioner and Homberg and Reymert, to give to the petitioner its liability for the $1,000; and, if she chose to take that and give up any liability of Homberg and Reymert, it was at her option to do so. She did so, and the corporation gave her the evidence of what was, in fact, a debt of its own to her.

This note set forth in the petition was not paid at its maturity, November 19th, 1871, and it had not been paid when the petition was filed, January 6th, 1872. Several other

notes of the corporation were due when the petition was filed. But, in regard to all of them, as well as to the note held by the petitioner, I do not think the evidence makes out a case of the stoppage or suspension and non-resumption of payment of the notes, within the sense of the act.

When a person fails generally to meet his commercial paper according to the usual course of business, and suffers not some, but all of it, as it matures, to go to protest, and so comes to a general suspension, because unable to proceed further with his business, he is undoubtedly within the clause, the suspension continuing for fourteen days. But, on the other hand, the clause ought not to be used to enable a creditor to collect an ordinary debt on commercial paper, where the circumstances show that, although the paper is not paid, though due, there has been no stoppage or suspension of payment of the commercial paper of the debtor, within the meaning of the clause. In such case the ordinary remedy furnished through a suit to collect the note, is all that the creditor is entitled to. In re Compton [Case No. 3,940]. It is not a stoppage or suspension within the clause, when a sufficient excuse is shown why the paper was not paid; and, even though the suspension may have continued for fourteen days, yet a bona fide denial of liability on the paper in respect to which the suspension occurs is such an adequate legal excuse, that a person ought not to be adjudged a bankrupt solely for suspending for fourteen days on the paper, even though, on investigation, the bankruptcy court may be of opinion that, in fact, the debtor was liable on the paper. See Davis v. Armstrong [Id. 3,624]; In re Thompson [Id. 13,936]; In re Hollis [Id. 6,621]. The true view on this subject, is, in my judgment, that laid down in McLean v. Brown [Id. 8,880], by Judge Treat—that the suspension referred to in the act is a general suspension of commercial paper, not the refusal to pay paper in respect to which liability is denied; that the bankruptcy court will not sit to try the validity of the reasons alleged for the non-payment of the paper in respect to which the liability is denied; that it is not a court for the mere collection of debts; that each case must be considered by itself in connection with the circumstances surrounding it; but that, when a party fails to pay his paper for want of means, and continues unable to pay it, he has suspended, within the meaning of the act. It by no means follows, that a debtor may not, under certain circumstances, be considered as having really suspended payment generally of his commercial paper, although but a single piece of paper is shown to have lain over unpaid for fourteen days. On the other hand, the court must guard against being imposed upon by a denial of liability which is altogether sham, and not made in good faith. The denial of liability may, however, be founded on reasons which are not valid, and which would fail as a defence in a direct action on the paper, and yet the denial may be made in good faith, in such wise that the non-payment cannot be regarded as a stoppage or suspension, within the act.

In the present case, it is not shown that the corporation failed for want of means to pay the note held by the petitioner and the other paper referred to, nor is it shown that it was insolvent when the petition was filed. It is not alleged to have preferred any creditor, when insolvent, nor is it alleged to have committed any other act of bankruptcy than the suspension of payment for fourteen days of its commercial paper. Although subject to the supervision of the authorities of the state created for the purpose of investigating the affairs of insurance corporations and winding them up when insolvent, no proceedings had been taken against it as an insolvent institution, by the state authorities. Within a week prior to the maturity of the note held by the petitioner, the former president of the corporation resigned and a new president took his place. The affairs of the corporation seem to have been in much confusion, and its books were not kept in such form as to afford the information which they ought to have afforded in regard to its business. Its accounts had not been kept separate from the accounts of its former president, and, without imputing any misfeasance or malfeasance to any person, it is not too much to say, that the information, and want of information, on the part of the new president, in regard to all the commercial paper referred to, and its consideration, and his views and those of his associates, honestly entertained, as the proof shows, in regard to the liability of the corporation to pay the same, were such that the failure to pay it, and the continuance of such failure down to the time of the filing of the petition, cannot be regarded as a stoppage or suspension and non-resumption of its payment, within the act.

The petition is dismissed, with costs.